No. 10,036.

## J. G. ST. JULIEN VS. MORGAN'S LOUISIANA AND TEXAS RAILROAD AND STEAMSHIP COMPANY.

The Legislature, in granting to the defendant company immunity from suit elsewhere than at its domicile, for causes of action other than trespass, designed to restrict the character of suits *not* brought at the place of domicile, to actions of tort, for wrongs committed, and its *unlawful* entry upon the lands of citizens *vi et armis.*

Trespass is an unlawful act committed with violence on the property or rights of another. An action of trespass is that which is instituted for the recovery of damages for a wrong committed with immediate force.

In case the owner of land permits its use and occupancy by a railroad corporation, and the construction thereon of a *quasi* public work, without resistance or complaint, he cannot thereafter require the demolition thereof, nor prevent its use by such corporation.

Such owner is not debarred of hi action for *compensatory* damages, if instituted at the domicile of the company; but he cannot affect to treat such entry as *tortious, and sue* it, as a trespasser, at the place where the injury is alleged to have been sustained.

A PPEAL from the Twenty-sixth District Court, Parish of Lafayette *De Baillon*, J.

*M. E. Girard*, for Plaintiff and Appellee.

*H. L. Garland* and *Leovy & Blair*, for Defendant and Appellant.

The opinion of the Court was delivered by

WATKINS, J. The demands of the plaintiff are founded upon the reservation in his favor contained in our decree in the previous suit between the same parties. 35 Ann. 924.

He claims of the defendant company the sum of $3911 50, as compensatory damages, and which may be correctly itemized as follows, viz:

1. Value of land taken........................ $1087 50
2. Cost of fences............................. 500 00
3. Injury to 100 acres of land................. 500 00
4. Value of embankment...................... 1824 00—$3911 50

In the court *a qua* the case was tried by a jury, and they found a verdict in favor of the plaintiff for cost of fences and hedges, $500, but disallowed the remainder of his demands as prescribed. The defendant appealed.

*In limine* the defendant company filed an exception to the jurisdiction of the court on the ground that, under its charter, suit could not be brought against it, elsewhere than at its domicile, the city of New Orleans, for other cause of action than *trespass*. Sec. 12, act 37, of regular session of 1877.

And that the claim herein made did *not*, confessedly, arise from a *trespass* committed by the company on the person or property of the plaintiff, as will appear from his petition.

This exception was overruled by the judge *a quo*, and the correctness *vel non* of his ruling must be first ascertained, and decided.

In making the exception defendant relied upon the provision of its charter contained in section 12, as restricting the right to sue it, *elsewhere* than at the place of its domicile, to actions of *trespass*, and as taking said company, in all other respects, out of the operation of C. P. 165, paragraphs 8 and 9.

In State *ex rel.* Morgan's L. and T. R. R. and S. S. Company vs. Judge, 33 Ann. 955, we held the company's act of incorporation to be a private statute, and not a public law; and that the word "trespass," as employed therein, was "employed in its broadest sense, so as to comprehend a variety of wrongs, having the common element of *a use of force*, whether direct, or indirect."

In the more recent case of Heirs of Gossin vs. Williams, and Morgan's L. and T. R. R. and S. S. Co., 36 Ann. 187, we said of the same statute:

"It is evident that the Legislature, by granting to the company immunity from suit, out of New Orleans, its legal domicile, *except in cases of trespass*, meant to confer some privilege or advantage, which otherwise would not have existed. The design was clearly to restrict the character of suits, *not* brought at the place of domicile, to cases of *trespass*."

Though it cannot be said to have, in any legal sense, repealed the article of the Code of Practice, it did have the effect of relieving the corporation from the effect of those provisions conferring jurisdiction on the judge of the place where the property is situated, to try and determine suits for damages *other than for trespass*.

In the opinion last quoted from we also treated of the action of trespass, as contemplated by the defendant's charter, and said:

" Trespass is defined to be an *unlawful* act committed with violence, *vi et armis*, on the person, property, or relative rights of another.

"An action of trespass is that which is instituted for the recovery of damages for a *wrong* committed against the plaintiff with immediate force."   P. 188.

Our predecessors, in construing C. P. 165-9, employed similar language:

" The Legislature contemplated the *active* violation of some right, or the doing of some *illegal* thing, acts of *commission*, which give rise to an action for damages, and that the rule does not apply to *omissions*, neglect or failure to do.

" Wrongs of this class are excluded by the use of the words " commit" and " committed,"   *   *   and which, necessarily, imply action." 30 Ann. 609, Montgomery vs. Levee Company; 31 Ann. 566; 39 Ann. 29.

The plaintiff does not, in his petition, class, or style this as an action of trespass.   In our former opinion (35 Ann. 924) the character of his original suit was fully examined and defined, and the reservation in his favor clearly outlined.

It was regarded and treated as one possessing some of the characteristic of a petitory action for the recovery of certain land occupied and used by the defendant as a road-bed for its railway—claiming that it had entered thereon in July, 1879, without his permission. and without purchasing, or appropriating it—and for rents and revenues.

After carefully reviewing the evidence, we said : " It is unnecessary for us to say, or intimate how, or whether he would have been protected had he done more than talk to a lawyer.   Certain it is he did not invoke the arm of the law, at the time it could have been of service to him, but, on the contrary, acquiesced in the defendant's taking possession, and using his property; encouraged it to prosecute its work by abstaining from every attempt to prevent it, and made no complaint in a court of law, of the injuries inflicted upon him, until the defendant had expended large sums of money in completing it.   Having thus permitted the use and occupancy of his land, and the construction of

a *quasi* public work thereon without resistance, or even complaint, he cannot afterwards require its demolition, *nor prevent its use*, nor treat the company erecting it as his tenant.

"He is not barred from an action for damages by reason of the taking of the land, and for its value ; *but having acquiesced in the entry, and encouraged*, if he did not invite it, *he cannot affect to treat it as tortious.*

"Considerations of public policy, not less than the suggestions of natural justice, require that, in such case, the owner shall not be permitted to reclaim his property free from the servitude he has permitted to be imposed upon it, but shall be *restricted to compensation.*"

The taking possession of plaintiff's land was not accomplished by a resort to violence, nor through the commission of a wrong, a tort, or other illegal act. The plaintiff not only did not make resistance to the entry of the defendant, but acquiesced in it, and encouraged it to construct its railway thereon.

He cannot now prevent the defendant's use of it, nor treat it as a trespasser in so doing.

In support of the views expressed by the court the opinion quoted the following very pertinent paragraph from Pierce on Railroads, viz :

"If the company had made an· *unlawful* entry to construct its road, it would be liable in an *action of trespass* for the injury accruing therefrom, and the satisfaction of that judgment would not have the effect of making the appropriation legal, as would the payment of the award in proceedings for condemnation; but the company would remain liable to *successive actions of trespass for the continuing nuisance*, or to successive actions for the recovery of rent for the continuing use of the land." P. 169, 230.

Hence, the defendant is not liable in an action of *trespass* for the injury accruing for its use, but may be sued, only, for compensation.

The opinion also quotes with favor, Mills on Eminent Domain, who says :

"Slight acts of acquiescence on the part of the owner will estop him from interferring with the running of a railroad.

"He will not be deprived of his claim for damages, or his right to enforce it in all proper modes; but, if he has, *in any sense*, for the shortest period, clearly given the corporation, either by his express consent, or by his silence, to understand that he did not intend to object to their proceeding with the construction and operation, he cannot, on non-payment of compensation, maintain ejectment. If there was, in fact, a waiver, either express or implied, by acquiescing in the

proceedings of the company, to the extent of not insisting upon pre-payment as a condition precedent, but consenting to let the damages lie and remain a mere debt, with or without a lien upon the road-bed, *then it is impossible to regard the corporation, in any sense, in the light of a trespasser, or liable to ejectment.*" Sec. 140.

The converse of that proposition is clearly stated in Salt Lake City vs. Hollister, 118 U. S. 256, in which the Supreme Court held that a railroad company, authorized to acquire a right of way by the exercise of eminent domain, which *seizes* upon the land of a citizen, makes no compensation, and takes no steps for its expropriation, "is a *naked trespasser, and can be made responsible for a tort.*" The two are easily reconcilable, and are reconciled on the theory of our opinion.

In that case the plaintiff's demand for ejectment was refused because the entry of the defendant on the plaintiff's land was with his consent or acquiescence. The logical deduction from that decree is that plaintiff has no right of action for *trespass*, and had only reserved to him therein, an action for *compensatory* damages for the value of his land, and the injury he may have suffered by the taking of it. The plaintiff's suit should have been instituted at the defendant's domicile. The exception to the jurisdiction of the court should have been sustained, and the suit dismissed.

It is, therefore, ordered, adjudged and decreed, that the verdict of the jury be set aside, and the judgment appealed from annulled; and it is now ordered, adjudged and decreed that the defendant's exception to the jurisdiction of the court *a qua* be sustained, the suit dismissed, and that all costs be taxed against the plaintiff and appellee.